Now, for Kuri v. Chicago, Mr. Ron Reek. May it please the court, all five claims that were tried in this case were based exclusively on what Mr. Kuri alleged was his unlawful detention while awaiting his criminal trial. The judgment for him is not supported by the jury's verdict on any of the claims. The verdict on the due process claim fails to support the judgment because a claim for unlawful pretrial detention is not cognizable under the due process clause. The verdicts on the Fourth Amendment claim and the state law malicious prosecution claim each failed to support the judgment because as a matter of law, Detectives Foligno and McDermott had probable cause to have Mr. Kuri detained. And the verdicts on the two remaining claims, the federal conspiracy claim and the federal failure to intervene claim, do not support the judgment because both of those claims are derivative of the due process and Fourth Amendment claims. Mr. Ron Reek has good morning. This is morning opener. Did you not raise Lewis in the post-judgment briefing? And if not, why is that not a waiver? This was an important change in this circuit's case law, it seems to me, that you would have wanted to bring to Judge Chang's attention. It certainly was not raised. We don't think that that means that we failed to preserve it. The Lewis case simply interpreted manual one and manual one was entirely consistent with this circuit's cases that had governing cases for the prior 15 years. And so did, and Lewis was consistent with those cases too. It seems to us that the law did not change, the issue had been preserved with the denial of summary judgment. Judge Roebner, go ahead. It seems to me that Lewis is the key decision of this court. It was decided, of course, in the midst of post-trial briefing, and it's awfully clear, in my view, to foreclosing relief under the due process clause. In your brief, you want us to treat our now overruled decision in Hurt as the governing precedent, but it is no longer good law. I'm sorry, I interrupted you. No, go ahead. We do not rely on Hurt at all. In fact, Hurt was, in our view, inconsistent with prior governing decisions and failed to overrule them, and Hurt itself was overruled. We don't rely on Hurt at all. Certainly, Lewis supports our position, but so did many cases of this circuit before then, beginning with the Newsom case and including Lovett. And Manuel 1, the Supreme Court's decision, simply followed that same law, did not disturb the ruling in any of those earlier cases that were governing at the time this case was trialed. Lewis simply interpreted Manuel 1 to do that, and all the cases are consistent in that regard. Counsel, I have a question related to Judge Rovner's. There is, it seems to me, a serious problem of waiver in this case. I'm interested in your view of when and how you raise the issues you're now presenting on appeal. Your reply brief says that they were raised in a motion to dismiss the complaint. Were they raised, presented to the district court at any later time at all? Yes, they were presented on summary judgment as well. They were presented in the motion to dismiss, and then we prevailed on part of the due process claim. We prevailed on the withholding of exculpatory evidence part, but we didn't prevail on the evidence fabrication, excuse me, we prevailed on the evidence fabrication part, but not on the withholding of exculpatory evidence part, and those were reinstated on the ruling on summary judgment after we, in our summary judgment filings, reiterated our position that the due process claim was not cognizable. So, yes. Were any of these arguments identified in the pretrial order? Your Honor, I don't know whether those arguments were identified in the pretrial order. And I gather you're conceding they were never raised at the jury instruction conference or as part of the debate about the jury instructions. The appellate says that you actually proposed or consented to the jury instructions. We've said quite a few times that the way you raise issues for trial is in the pretrial order, in the jury instruction conference, or both. And I wonder whether you say you've raised these issues on either occasion. Well, this court's decision in Houskin's held that an argument that was not included in the final pretrial order or in a Rule 50 motion is preserved for appeal whether it was rejected on summary judgment. So, I think that... I'm not sure how that works, because we also say that once the trial occurs, the summary judgment proceedings are irrelevant. Once summary judgment occurs, the proceedings on dismissing the complaint are irrelevant. The case goes through stages, and the way you preserve issues at trial is to preserve them in the pretrial order or the jury instructions. Well, the HK Systems case of this court and the Chemitol case indicate that... In any event, before you... I asked a question about when you made certain arguments, and you answered by saying, well, decisions of this court say something. I want to be sure I understand your argument to my factual question. When did you raise certain arguments? Were any of the arguments you're now making on appeal raised in the pretrial order or in connection with the jury instructions? My understanding is that they're not, but I cannot remember for sure whether they are, and our position is that it doesn't matter whether they are, because the HK Systems case and the Chemitol case and the Houskins case indicate that once the... A pure issue of law on summary judgment, not an issue that involves factual determination on an issue, on a pure issue of law on summary judgment, once the court rejects that position, the argument is preserved for appeal and need not be raised at any subsequent portion of the case, at any subsequent stage of the case. I'd like to turn to the... I'd like to ask you another question, please, that has me worried about a waiver. On the Fourth Amendment claim, did you ask for a Fourth Amendment instruction incorporating the additional element that you say is required to recover under the Fourth Amendment the corruption of the judicial officers or grand jury probable cause finding? And if you didn't, why wouldn't that be a waiver? We didn't, and we do not argue on this appeal that there was any error in jury instruction on the Fourth Amendment claim. We say that in our reply brief, and we do regret having... Rereading our original brief, we understand the confusion that it may have... The impression that we may have left, and we regret that. We do not press an argument on this appeal that there was an error in the jury instruction on the Fourth Amendment claim. Now, the verdicts on Mr. Curry's Fourth Amendment claim and his state law claim do not support the judgment either, because as a matter of law, the detectives had probable cause to have him detained. As the Supreme Court has repeatedly explained, and I quote now from Westby, to determine whether an officer had probable cause, we examine the pertinent events and then decide whether these historical facts viewed from the standpoint of an objectively reasonable police officer amount to probable cause. And Westby also reiterated that probable cause is not a high bar. It requires only the probability or substantial chance of criminal activity, not an actual showing of such activity. But the jury required to believe that Russell, in fact, did name Curry as one of the perpetrators when Russell had testified at the criminal trial, that he did not? The jury was required to believe that. And in fact, the position of Curry's counsel during the civil trial in this case was, in fact, that the detectives told Russell during that initial interview that Curry and Gomez were the offenders, and Curry confirmed that that was so. So it was the position of Curry himself that Russell testified, excuse me, that Russell had told the detectives during their initial interview of him that Curry and Gomez were the offenders. Well, look, even if we assume that Russell did name Curry, but did so after the detectives first mentioned Curry's name to him, why is this entitled to much weight in the probable cause analysis? If, as Russell testified, the detectives were assuring Russell that Curry was a perpetrator and encouraging him to go along, how much weight do we give this fact? Well, as the Matthews Discourse decisions in Matthews and Spiegel say, that as long as a reasonably credible witness or victim informs the police that someone has committed a crime, the officers have probable cause. The officers had no reason to disbelieve Russell when they confirmed, when he confirmed to them that Curry and Gomez were the offenders. I see that I only have six minutes or so left. I do have one more question in that line. If it was the detectives who first mentioned Curry to Russell, did they have anything more to go on than WACA's tip? And that itself was problematic, wasn't it? Yeah, we do not rely on WACA's tip. We maintain that however the officers would have learned about Curry and Gomez, assuming as Curry maintains, that they mentioned to Russell Curry and Gomez's names first, and Russell then confirmed this, that established probable cause. If I may reserve the remainder of my time for rebuttal. Certainly, Counsel. Thank you. Mr. Levy. Good morning. My name is John Lobey and I represent the plaintiff, Anthony Curry. May it please the court. Let me start you right out. We would have to overrule Lewis to say that the due process claim was viable, wouldn't we? Well, Your Honor, the decision in Lewis is in tension with our argument here, but obviously I want to take a step back and say that is not before this court, because it was not only forfeited, but waived. And I'd like to talk about that. But I'd also like to explain to you why we believe that the McDonough decision actually should cause this court to revisit its thinking. So let's take them one at a time. And I want to start with taking a step back. And that is that is all academic here, because if we win their sufficiency, the evidence challenge on the no probable cause, the case is over because we have a Fourth Amendment claim. Everybody agrees we have a Fourth Amendment claim. There are no other challenges. And the verdict is supported. The due process clause is an independent way in that doesn't require the no probable cause finding, and therefore independently upholds the jury verdict, even if they were right on their sufficiency, the evidence challenge, which they're not. But of course, the only objection they make to the due process claim is the Lewis argument. And that is waived. I want to be clear. My opponent said he didn't remember if the Lewis or the manual argument was ever made previously. I can state unequivocally that it was not in the motion to dismiss in 2013. They argued that there's no such thing as a constitutional claim for fabrication of evidence. And if there is, it's a state law remedy under Newsom and the acquittal defeats it. No argument whatsoever about manual, which hadn't been decided or Lewis or any such thing. And the same with summary judgment. By the time summary judgment was decided, manual one had been decided. They made no such arguments whatsoever. They persisted in arguing that there's no constitutional claim at all. And then, of course, came the jury instructions. And as one of your honors pointed out, they proposed an instruction by which the jury would be able to decide a cognizable claim for due process. They preserved no objection in the pre-trial order in conjunction with proposing that instruction, nor did they raise one at either pre-trial conference or the jury instruction. Now, my opponent raised the HK systems case and claims that it stands for the proposition that, hey, if we lose summary judgment and question of law, we don't have to actually preserve it. Well, that case was cited in a reply. I went back and read it and they are misreading. They have a point that the case says that summary judgment on a pure question of law is less salient than if it's a legal question. But the very next paragraph in that decision says they took a big risk by not putting it in their judgment as a matter of law motion. And they said they basically what the court said was they had to throw themselves at the mercy of the district court to even consider their argument in their post-trial motion because they had failed to preserve it. Here, of course, were multiple steps past that. Not only was it not preserved in a motion for judgment as a matter of law 50A, but they didn't raise it in 50B. And they didn't raise it in Rule 60. And they never raised it. So that case does not say by saying something in summary judgment is heretofore preserved for all purposes. Even the Hoskins case that he also cited also is very clear that they persistently preserve their objection. No such preserving here. Not only did they not preserve it, they never mentioned it. We all know what's really going on here. None of these arguments even occurred to the attorneys who litigated the case. It's not until they got to the appellate division at the city that they thought of these new arguments. But that's not the way it works. They can't just come with a whole new set of arguments on appeal. Clear forfeiture, you shouldn't excuse it, but it actually goes as far as a waiver. And I'm glad we're talking in terms of waiver because that's what's going on here. This office, the defendant's office, Mr. Henrich's office, litigated Lewis. While they were litigating the post-trial motions in Curry, they were litigating the post-trial motions in Lewis and winning. They elected not to make a Lewis argument in this case. And there are consequences to that. So as for the academic question as to whether or not Lewis governs our due process claim, it has been waived. It has been forfeited. Now, with your honor's indulgence, I'd like to give you our position on why, in fact, your honors should revisit Lewis. Because I have already acknowledged that Lewis is in tension with our position. But our argument is as follows. Manuel involved a case that had a Fourth Amendment claim only. And the Seventh Circuit law at the time was it's a Fourth Amendment claim up until the time due process. I'm sorry, process issues. And then after that, it's a due process. And the seventh and the Supreme Court said, well, that's wrong. A Fourth Amendment claim continues even after the issuance of process. It's not substantially altered by the issuance of process. So a Fourth Amendment claim doesn't just stop with the issuance of process. Manuel did not say, and by the way, you also have no due process. They weren't they were as a logical matter. They were silent on whether you could have an independent due process. In our view, Lewis, by drawing the conclusion, the inference I just said, got it wrong. And why do I believe that? Because McDonald McDonald sounds like you're asking us to overrule more than Lewis. Manuel, too, in this circuit, the remand decision in Manuel also says it's the Fourth Amendment or nothing. And I'm sure other cases saying the same thing. You're asking us to rule, I think, quite a lot. There are other cases that follow Lewis, including the cam case, which they cited. But, Your Honor, when I saw my panel this morning, I went and double checked Manuel, too, which, Judge Easterbrook, as you know, you authored. And I didn't see any language. I said, counsel, it is entirely irrelevant who writes the opinion of the court. All the opinions speak for the court as an institution. I apologize. And, you know, Your Honor, you've told me that before. And I'm sorry. But I was just saying that when I saw who my panel was, I went back and read Manuel, too. And I saw no language in there. That was about a statute of limitations. What McDonough said was in McDonough is our case. It's a guy who was deprived of liberty, was acquitted, and he pled both the Fourth Amendment claim and a due process claim. And the Supreme Court said in that footnote, too, you can have one wrong and certain wrongs. And the quote is certain wrongs affect more than a single right and accordingly can implicate more than one of the Constitution's commands. And, of course, McDonough would have been a pointless exercise if they weren't entertaining that you could have both Fourth Amendment and due process. Because why decide the statute of limitation on due process if such a claim didn't exist? So there is going to be a case when this court should look at whether McDonough should cause you to revisit Lewis and Cam and possibly Manuel, too. But this is not that case because it has been waived here. It has been forfeited here. So that's probably a question for another day. It's also moot. We don't even need the due process claim here because we win so clearly on the Fourth Amendment. And I want to talk about the Fourth Amendment claim and I want to talk about the probable cause. And I would start by characterizing their challenge. Let's not lose sight that it really is a sufficiency of the evidence challenge because all these issues were tried to a jury. The jury heard all the evidence. And it is a steep uphill climb to say that there was no evidence by which any rational jury could have found for the plaintiff that there was no probable cause. And Judge Chang didn't err in concluding that the jury got it right. It's especially true in a case like this where we're talking about a subjective thing like probable cause. It's fact intensive. It's credibility intensive. It turns with the context. As their own Wesby case says, it's fluid. There are no set rules. So in a case like that, when a jury sits through a week of testimony, judges the credibility and makes a call like that, it's really not the function of an appellate court to try to reweigh back in and decide it as if it was in the first instance. Especially whereas here, all four of their probable cause arguments they made strongly to the jury. The jury just rejected. So let's start with the first one. Mr. Lovey, do you agree that Russell did name Curry, albeit after the detectives first named him to Russell? Your Honor, it is beyond question that both Fernandez and Russell at some point went along with the police story that it was Curry. That's why Curry was prosecuted. But they both said they didn't see Curry that night. The police came to them and said, hey, we know who did it. We did all our work. It was Curry. It was Curry. And only after the police persuaded them that the person they didn't see was Curry, did they name Curry. So, you know, the analogy that comes to mind is if you fabricate an identification, you can't say I got an identification. If they said to Russell, I'm going to put a gun to your head, say it was Curry. And Russell said, OK, it was Curry. They can't say he said it was Curry. He said it was Curry. It's the circumstances that matter. And they didn't literally put a gun. I'm sorry. Would the detectives have had anything more than Walker's tip to go on when they named Curry to Russell? I want to be unequivocal on that one, too, because the counsel on the other side wasn't sure. The answer is no, there wasn't a shred of evidence connecting him to this crime. The DNA pointed away from him. The fingerprints pointed away from him. The pod video pointed away from him. His denials were unequivocal. There was never anything putting him in this crime. But Walker's silly tip, which he later admitted was a lie. And then the police went to see those witnesses and put the words in their mouth. And I want to just double back to the Russell thing. Russell said a lot of things a lot of ways. He was worried about being charged with perjury, et cetera. But he said the only thing he was unambiguous on was I never saw Curry that night. I know Curry. I didn't see him. That's on page 837, 843 and 845. He also said the police came back to him. I'm sorry. Somebody jumped in. He said the police came back to him three or four times, told him who did it, who to pick out. That's page 846, 847 and 854. And then he said when he did the photo array, the police had already told him who to pick, 840 to 842. So remember at the scene, Russell said, I got shot at. I don't know who did it. I saw two members of the rival gang, Chino and Funk. He gave their names. He was being forthcoming. He gave physical descriptions of the two Hispanics he saw when the van stopped. Curry is not a Hispanic. There's no suggestion he didn't cooperate. There's no suggestion he was afraid. He just didn't name Curry's name because he didn't know it was Curry, because he didn't see Curry out there. Then Foligno gets this bogus tip from this guy, Waka, who's a frequent flyer informant, who's always getting in trouble and then getting out of trouble. And Waka tells him this crazy story that I was on the phone during the shooting. And, you know, he's got to give him a name to get out of trouble. And Waka got out of trouble. His aggravated battery charges got dismissed. And he gives them the name of this throwaway kid in the neighborhood, Curry. And then they go back to the witnesses. And Fernandez tells you what happened when they came back to him. Fernandez says they came to me. I told him I didn't see it. I got ambushed. I was in a van. Somebody shot out our windows. I didn't see it. They said, you know what? Curry's saying you did it. Curry's saying you did it. We know it was Curry. Say it was Curry. And Fernandez very... I'm sorry to interrupt, but if Russell did indicate in some manner that Curry was one of the perpetrators, then why could the detectives not reasonably rely on that as confirmation that Curry was in fact a perpetrator? How does this case differ from the ordinary case in which detectives may, you know, give a name to a witness and ask if that individual was a perpetrator? Because that's not this case, Your Honor. And that should be the clearest. If I'm clear about nothing else, all through the criminal trial, all through the civil trial, the argument was we had probable cause because we went to Russell and Fernandez and said, who shot you? And they gave us a name of a kid we had never heard of, Anthony Curry. And they said we had probable cause because he gave us this name. The witnesses said, no, we told them we didn't see who did it. We don't know who shot us. They told us it was Curry. Those are two completely different scenarios. And the jury had to decide which was true. And we had that smoking gun tiebreaker. They were claiming the police got on the witness stand and said this Curry name meant nothing to us. The report said on August 2nd, they gave us the witnesses said it was Curry. On August 2nd, the witness said it was Curry. Russell said it was Curry on August 2nd. The smoking gun, and it really was a Perry Mason moment at this trial, was they had neglected that there was a photograph that they had pulled of Curry that had a date stamp from the department. That was August 1st. So they had Curry's photo that when they went into the interview. So the jury looked at the defendants and said, you guys are lying to us. When you say this, this Curry name came from the defend from the witnesses on August 2nd. And they said we didn't know Curry's name from Adam. That's why we had probable cause. The witnesses, the perpetrators name came from them. Well, they were busted because they had in their file the day before that this was their suspect. And then you couple it with the witnesses saying this was fabricated. Yes, we said the name Curry because they told us it was Curry. We both told them we don't know who shot us. And they said, well, we did your work for you. Fernandez, you can have $11,000 in victim compensation money if you cooperate. And they told Russell over and over again, even though he told them repeatedly, he didn't see who shot Curry. They told him who to pick out. That's not probable cause. Now, I feel like I'm giving my closing argument. And that's, of course, not what we're doing here. All this happened at the trial. And that's why we have jury trials. And the jury saw the police officer's credibility. The jury was instructed on what it means to have probable cause. And the jury found for us, you cannot say that as a matter of law, you can fabricate an I.D. And then say I'm going to rely on the I.D. And I quote from their brief. This is page 32. We likewise acknowledge this is the defendant's talk. We likewise acknowledge that the jury verdict on Curry's uncognizable due process claim must be taken to mean that the detectives told Fernandez and Russell which photos to pick. We won the fabricated identification claim. You can't fabricate an I.D. and then say, well, he spit it back to us. I gave you my analogy about the gun. If they had held a gun to his head and said, say it was Curry, he said, OK, it was Curry. You can't fabric. You can't coerce it. And you can't fabricate it. And the jury here was asked to pick between two very different versions of the fact. And they picked for us. And there was a second reason why you shouldn't sit as a super jury. That's McDermott's admission. McDermott said point blank. Look, he sat through the whole trial. We're saying you guys put the name Curry in the witness's mouth. They said, no, we never heard of Curry till they told us Curry. And we said to McDermott, well, if you would put it in his mouth and then pretended to the criminal justice system that it came, you know, on and it came unprovoked. Hey, we know Curry is unprovoked. Curry did it. Wouldn't that not be probable cause? And McDermott admitted it was not probable cause. If they had suggested the name Curry to Curry to the eyewitnesses and then the eyewitnesses had adopted it, that would not have been enough. That was McDermott's testimony. They say McDermott was wrong, but the jury could credit it. And McDermott made another concession. He admitted that on August 5th, after they had interrogated Curry for days, they picked him up. They wouldn't they didn't make any police reports. They didn't give him access to a lawyer. They locked him in a room. They didn't videotape it. And at the end of that interrogation, they got exactly nothing from him other than I don't know what you're talking about. And we said to McDermott, why did you release him after August 5th? And he said, because we didn't have probable cause. But your honors, on August 5th, they already had these supposed identifications from both Russell and Fernandez. They had this alibi stuff, the flight stuff, everything they ever had. It is undisputed. They never developed an additional shred of evidence. So that is an admission that they didn't have probable cause based on these fabricated identifications. Again, Mr. Henrich disagrees. He thinks McDermott was wrong, but the jury didn't have to disagree. When one of the defendants is saying there's not probable cause, there's no probable cause. You're not the jury. You know, this is not closing argument all over again. There was a trial, and our system puts a lot of respect on jury trials and with good reason. It is not probable. You can't pretend that the name came from these witnesses, tell the criminal court system that, hey, we're just doing our job. We asked you who shot you. They said it was Curry, when in fact, they got a bogus tip that was a lie. They repeatedly went to these witnesses three, four times. The witnesses said we didn't see who did it. They said, we know it was Curry. We know it was Curry. You can get $11,000 in victim compensation money if you cooperate. And finally, they say, fine, we'll say it was Curry. And then, of course, when they got to trial, they were three, four years older. They weren't Curry's friends. You know, they haven't talked to him in 10 years, but they were adults. And they said, you know what? We didn't see who shot us. And the police told us who to say. You know, we're not anti-police. We're not trying. Police have a hard job, but they cannot cut a corner like that. I realize the police take it from both sides. They get criticized. If they don't close cases, they get criticized on all sides. But you can't close a case by having a bogus tip and then just sticking it on some kid. That's what you can't do. And that's what they did here. And it devastated Curry's life. They don't contest the damages. He won this jury trial, and he won it by a lot. You know, the only reason Judge Robner that they're talking about this silly, fabricated identification as giving them probable cause, it's not because there's merit. It's because that's all they got. There's nothing else they could argue. So that's what they're arguing. But that doesn't mean there's merit. You know, the flight argument, the alibi argument, those are all addressed in our brief. Interestingly, that they're all circumstantial. None of those give probable cause. You know, all that would suggest is that a jury could have agreed with them. We said in our brief, and I stand by it, it would have been a more interesting question if we had lost this jury trial. And we were before you saying there is no probable cause as a matter of law. We could have won that argument, that there was no probable cause on these facts as a matter of law. What they can't win is the reverse, that us having won the jury trial, that you have to find probable cause as a matter of law. So with that, if there are no further questions, I appreciate your time this morning. Thank you, Mr. Loewe. Mr. Enriquez, anything further? Yes, please. May it please the court. With respect to the issue of the due process claim, we maintain that counsel has misrepresented the HK Systems case, the Kemah Tall case, and there are several other decisions of this court that make clear that once we preserve the argument by raising them first in our motion to dismiss and then reiterating them in our summary judgment motion, we rest on our briefs for the details of that. With respect to the Fourth Amendment claim, there was in fact probable cause as a matter of law, and we set out the four different reasons why that is so. Mr. Loewe has misrepresented much of the evidence in this case. Russell testified, and both Fernandez and Russell testified in this case, and we set out that testimony in great detail in our reply brief on pages 14 through 16, that they both saw the shooters, that Fernandez didn't recognize the shooters, that Russell did recognize the shooters, and that while – and Russell's testimony was that ultimately, that while Curry was not one of them, he knew who the shooters were. While Curry was not one of them, he told the officers that Curry was one of the offenders, and that established probable cause. The officers had no way to know who – whether – that that was false. There's no coercion in this case. There's no compensation that was offered to Russell in this case. There was no reason for them to believe – for the officers to believe that Russell told any – was not telling the truth, and that – and he maintained that same position until the criminal trial in this case three years later. With respect to the photo and the smoking gun argument, that is completely a sideshow. The photo – it is undisputed in this case that at the interview – that the initial interview in which Detectives Foligno and McDermott – their initial interview of Russell, Russell acknowledged to them that Curry was one of the offenders. That – the – whether the photo came earlier or later, whether they discovered the photos earlier or later, there's no – there's no evidence that at that interview – at that interview with Russell, they showed him any photographs or anything. They simply asked him who the – who were the offenders, and whether they mentioned Curry's and Russell's names first or not doesn't matter. It also doesn't matter how the officers may have learned, if they did, that the – that – about the – that Curry and Gomez were the offenders. It simply doesn't matter. However they may have learned it, when they came to that interview and they said – assuming they said, are Curry and Gomez the offenders? And Russell said, yes, that established probable cause, because the officers had no reason to believe that that was not the truth. The photos came later, and because probable cause had already been established, nothing that the officers could have said to Russell and Fernandez could have had any bearing on the existence of probable cause. Detective McDermott's admission that there was no probable cause is irrelevant in this case. Counsel empowers that the issue in this – the probable cause issue in this case is whether an objectively reasonable detective – not whether the particular defendants in this case had – not what they knew, but whether an objectively reasonable detective could have believed that the – that there was probable cause. So McDermott – Detective McDermott's statement is completely irrelevant with respect to probable cause. The – we have not talked about the other reasons – independent reasons why there were probable cause. Curry's lying to the detectives when they interviewed him about an – a very pertinent aspect of the investigation that he certainly would have known was pertinent to the investigation, and he knew that he was a suspect in the investigation that established probable cause as well, as did his fleeing to – 80 miles away to Rochelle, Illinois, with no subsequent excuse given to the detectives about why that is so. And finally, he does not have a substantiated alibi. We ask the court to a – to reverse the judgment in this case and enter judgment for the two detectives and the city. Thank you. Thank you very much, counsel. The case will be taken under advisement.